# IN THE COURT OF APPEALS OF IOWA

No. 20-1726
Filed March 17, 2021

**IN THE INTEREST OF K.D.,**
**Minor Child,**

**R.D., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A father appeals the termination of his parental rights to his two-year-old son. **AFFIRMED.**

Shane P. O'Toole, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Meegan M. Keller of Keller Law Office, Altoona, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

In terminating his parental rights to his two-year-old son, the juvenile court noted Randy's "history of instability, drug use, treatment failure, relapses, and criminal conduct" over the past sixteen months. Appealing that order, Randy argues the court should have granted him six more months to work toward reunification. He also contends the State failed to prove the grounds for termination and termination is not in the child's best interests. After our independent review,[1] we reject his claim for additional time and find termination is in the child's best interests. We need not address the statutory grounds for termination, as Randy asked only for more time for reunification. Thus, we affirm.

K.D. was born in February 2018. When K.D. was eighteen months old, the Iowa Department of Human Services (DHS) launched a child-abuse investigation after Randy reportedly "shook and threw" his son to the ground during an argument with the child's mother, Laci.[2] The State charged Randy with child endangerment resulting in bodily injury. The juvenile court issued a no-contact order preventing Randy from interacting with K.D.

The DHS issued a founded report that Randy physically abused K.D. Through its investigation, the DHS learned that both parents struggled with methamphetamine addiction and lacked stable housing. Social workers were also

---

[1] We review the termination of parental rights de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). We give weight to the juvenile court's fact findings, especially when we assess witness credibility, but they do not dictate our result. *Id.* Our main consideration "is the child's best interests." *Id.* (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014)).

[2] The juvenile court also terminated the parental rights of K.D.'s mother. She is not a party to this appeal.

concerned about Randy's pattern of domestic violence toward Laci. Based on the parents' unresolved issues, the juvenile court removed K.D. from their custody in July 2019 and placed him with his paternal grandmother.[3]

Then in October, the court adjudicated K.D. as a child in need of assistance (CINA).[4] In the same order, the court directed both parents to undertake random drug screens; substance-abuse and mental-health evaluations; a parenting class; and family safety, risk, and permanency (FSRP) services until K.D. could safely return to their care. The court granted the DHS discretion in determining visitation.

At DHS request, the court amended the no-contact order to permit fully supervised visits between Randy and K.D. Over a year later, Randy had not progressed to unsupervised visits because the DHS had ongoing concerns about his mental health. In an October 2019 report, the FSRP provider recounted "Randy was too angry and hostile to do a visit." When the service provider continued the visit with just Laci and K.D., she reported that "Randy kept pounding on the office door." After observing his aggressive behavior, the DHS separated the parents' visits with K.D.

Randy's aggression was a reoccurring issue throughout the CINA case. In an April 2020 progress report, the FSRP worker described that Randy had been "verbally violent" toward her over the phone. And in June 2020, after nine months

---

[3] At the July removal hearing, Laci signed a stipulation with the State, consenting to K.D.'s removal and her participation in DHS services. Randy took no part because he was incarcerated for the child-endangerment charge and could not attend the hearing.

[4] Randy also did not attend the September adjudicatory hearing but was present at the October dispositional hearing. He again took "no position" on the stipulation involving DHS services.

of providing services, the FSRP worker noted that "he continue[d] to struggle with his anger management and behavioral control." Although Randy received medication to help control his outbursts, he stopped taking it. He also failed to attend therapy appointments after his initial consultation in October 2019. His unresolved anger issues manifested in three separate charges of criminal mischief in March, May, and August 2020, for intentionally damaging another's property. He pleaded guilty to those charges and was released on probation.

Likewise, Randy fell short in his efforts to stay sober. He repeatedly told caseworkers that he wanted to seek inpatient treatment for his substance-abuse problems. But when given the chance, he did not commit. His first attempt at inpatient treatment lasted only "a few days." He walked away from the program a second time "after a week." Then on his third go-around, he left within twenty-four hours. Although he did successfully complete a three-week program in the spring of 2020, he lapsed after his release.

Later that summer, Randy pleaded guilty to the child-endangerment charge. The juvenile court sentenced him to a suspended five-year prison term and three years of probation. As part of his probation, Randy agreed to enter a residential treatment program. But he was soon arrested for leaving the facility without notice. He was incarcerated for the remainder of the CINA case.[5]

In December 2020, the juvenile court held a combined permanency and termination hearing. Randy participated by telephone from jail. He asked for a six-month extension to work through his ongoing issues. As an alternative, he

---

[5] At the time of the December 2020 termination hearing, Randy was awaiting a probation-revocation hearing.

asked the court to move K.D. from foster care back to the paternal grandmother.[6]  In requesting a six-month extension, Randy advocated:

> Well, as soon as I get out of here, I plan on finding a job and getting a place stable for him, and there's nothing on this earth that is more important to me than that little boy.  I think about him every day.  I just I need—he needs me.  I need him.  I don't know what else.

He also insisted he would visit with his therapist again, get back on medication for anger management, and seek addiction treatment.  Unpersuaded, the juvenile court denied both requests and terminated his parental rights under Iowa Code section 232.116(1)(d) and (h) (2020).  The court reasoned: "Given the lack of progress in the past [sixteen] months, an additional six months will not eliminate the need for continued removal.  Children simply cannot wait for responsible parenting."  Randy appeals.

Randy first contends the juvenile court erred in denying his request for a six-month extension to work on reunification efforts.  *See* Iowa Code § 232.104(2)(b).  He asserts the DHS "made mere lip service efforts" to return K.D. to his care.  He also insists his "successful admission and completion of a substance abuse treatment program and parenting skills class while out of custody" demonstrated he was "a viable placement option in the near future."

The juvenile court has authority under Iowa Code section 232.104(2)(b) to grant or deny a parent's request for a six-month extension to work toward reunification.  But the court may defer permanency only if there are "specific factors, conditions, or expected behavioral changes" showing "that the need for

---

[6] After returning K.D. to Laci's care in January 2020, the court approved his second removal and placement into foster care in May 2020, where he has remained since.

removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.*

In denying Randy's request, the juvenile court determined that no specific conditions existed to justify delaying permanency for K.D. We agree. The DHS offered Randy consistent services during K.D.'s removal, including substance-abuse and mental-health evaluations, counseling and treatment services, parenting classes, and weekly supervised visits. Instead of engaging in services, Randy continued to act out and refuse to follow-up on mental-health counseling and medication management. Over one year into the CINA case, Randy was reincarcerated for destroying family members' property and violating his probation.

Although Randy did complete an inpatient program, he abandoned four others. His lack of commitment and ongoing addiction raise concerns about his ability to maintain sobriety. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct" and "we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future."). The juvenile court properly denied Randy's request for a six-month extension. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)).

Randy next asserts the State failed to prove the grounds for termination by clear and convincing evidence. At the combined permanency and termination

hearing, Randy made two requests: a six-month extension and temporary placement of K.D. with Randy's mother. Because Randy conceded that he needed more time to meet the permenancy goals and the child could not be returned to him at the time of the hearing, he waived any challenge under section 232.116(1)(d) and (h). *See In re C.O.*, No. 16-0635, 2016 WL 4036249, at *2 (Iowa Ct. App. July 27, 2016) (holding father failed to preserve error when his only request at termination hearing was "that he should receive an additional six months to participate in services and work toward reunification with C.O.").

To be sure, section 232.116(1)(d) required clear and convincing proof of these two elements:

> (1)     The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2)     Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Randy did not contest either element at the termination hearing. Instead, he acknowledged that he was not ready for full-time parenting (as he was in jail) and that he had not yet addressed his mental health and substance abuse. When asked about his plans for dealing with those issues, Randy said he would "find treatment," return to therapy, and seek medication. Thus, his testimony supported a request for extra time, not a challenge to termination.

Likewise, he did not contest any of the elements of section 232.116(1)(h). Under that provision, the State needed to prove by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing"). Randy's assertion that K.D. could safely be returned to his care six months *after* the termination hearing does not address the issue of whether K.D. could return home at the time of the hearing. We thus decline to reach the merits of either claim under Iowa Code section 232.116(1).

Finally, Randy argues termination is not in K.D.'s best interests. *See* Iowa Code § 232.116(2). He also asserts termination "is far more detrimental to his child, than any danger perceived by not terminating" because of their close bond. *See id.* § 232.116(3)(c). By not advancing a best-interests argument or a claim under section 232.116(3) in the juvenile court, Randy also failed to preserve error on these issues.

Nevertheless, we find termination is in K.D.'s best interests. We view termination proceedings "with a sense of urgency" when the child has been without parental care for over twelve months. *In re C.B.*, 611 N.W.2d 489, 494–495 (Iowa

2000).  In our best-interests determination, we consider "evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing."  *Id.* at 495 (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

The record gives us little hope that Randy will be able to resume care for K.D. now or in the near future.  No evidence suggests that, after sixteen months of minimal progress, Randy will meaningfully respond to services.  Given K.D.'s young age and his lengthy removal from parental care, now is the time for permanency.  *See In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").  The alleged closeness of their parent-child relationship does not override that urgent need.  *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).  Because adoption will better serve "the long-term nurturing and growth of the child," as well as "the physical, mental, and emotional needs of the child," termination is in the child's best interests.  *Id.*

**AFFIRMED.**